UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RONALD A. BRANDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:09-CV-152 |
| | ) | (VARLAN/GUYTON) |
| FINANCIAL ACCOUNTS SERVICES | ) | |
| TEAM, INC., FINANCIAL ACCOUNTS | ) | |
| SERVICES TEAM, and PHILIP S. KNIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 5], filed by defendant Financial Accounts Services Team, Inc. ("defendant FAST"). In the motion, defendant FAST requests that the Court dismiss plaintiff Ronald A. Brandon's ("plaintiff's") federal claim under the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692, *et seq.* (the "FDCPA"), for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and Rule 12(h)(3) of the Federal Rules of Civil Procedure. Plaintiff has responded in opposition [Doc. 6]. Defendant FAST has not filed a reply, and the time for doing so has passed. *See* E.D. TN L.R. 7.1(a), 7.2.

The Court has carefully considered the pending motion, plaintiff's response, and the parties' supporting documents [Docs. 5, 5-1, 5-2, 5-3, 6, 6-1, 6-2]. For the reasons set forth herein, the Court will deny defendant FAST's motion to dismiss for lack of subject matter jurisdiction.

**I.     Background**

This action arises out of an alleged debt incurred by plaintiff that allegedly went into default in October 1998 [Doc. 2, ¶ 8].[1]  Around 2002, the debt was acquired by Maui Collective Service ("Maui") [*Id.*].  In October 2002, defendant FAST acquired the debt from Maui [Doc. 5-2, ¶¶ 1, 3].  Defendant FAST sent an initial collection letter to plaintiff on or about November 20, 2002, and a second collection letter on December 10, 2002 [Doc. 5-2, ¶ 4; Doc. 2, ¶ 10].  Defendant FAST asserts that it sent a series of collection letters to plaintiff until the account was marked for credit bureau removal in March 2004 [Doc. 5-2, ¶ 4].  After March 2004, defendant FAST asserts that it sent eleven more collection letters to plaintiff [*Id.*, ¶ 5].  On July 23, 2007, having had no contact with plaintiff, either by telephone or otherwise, defendant FAST asserts that it cancelled the account for exhausted efforts and ceased all collection activity [*Id.*].  Plaintiff asserts that the time period for reporting the debt acquired by defendant FAST as delinquent expired no later than December 31, 2006. *See* 15 U.S.C. § 1681c(c)(1).[2]

Around January 2008, plaintiff asserts that he obtained a copy of his credit report from Equifax [Doc. 2, ¶ 12].  Plaintiff asserts that the credit report showed that defendant FAST

---

[1] The underlying debt is alleged to have arisen out of a repair bill for a transmission replacement for plaintiff's personal vehicle [Doc. 2, ¶ 8]. *See* 15 U.S.C. § 1692a(5) (defining "debt" for purposes of the FDCPA).

[2] Section 1681c(c)(1) of the FDCPA describes the running of a reporting period to be a "7-year period" which begins "upon the expiration of the 180-day period beginning on the date of commencement of the delinquency which immediately preceded the collection activity." 15 U.S.C. § 1681c(c)(1).  Plaintiff's debt is alleged to have entered into delinquency in October 1998 [Doc. 2, ¶ 8].

was reporting to Equifax that the date of first delinquency on the debt was September 2002 [*Id.*]. Plaintiff disputes this date, asserting that the proper date of first delinquency is November 2002 [*Id.*]. On February 1, 2008, plaintiff asserts that he sent a certified letter to Equifax and defendant FAST, notifying them of the disputed date and requesting that the incorrect date be removed from his credit report [*Id.*, ¶¶ 13, 14]. On or about February 19, 2008, plaintiff asserts that he received written notification from Equifax that defendant FAST had verified as correct the November 2002 date of first delinquency [*Id.*, ¶ 15]. Plaintiff asserts that he never received any response from defendant FAST regarding his February 1, 2008 letter [*Id.*, ¶ 16].

On April 28, 2008, plaintiff asserts that he obtained a copy of his Experian credit report, dated April 28, 2008, which showed that defendant FAST was continuing to communicate the incorrect date of delinquency [Doc. 6, p. 3]. On April 29, 2008 plaintiff asserts that he sent a second letter to defendant FAST regarding the disputed delinquency date and requesting a correction [Doc. 2, ¶ 17]. Plaintiff asserts that he never received a response from defendant FAST regarding his April 29, 2008 letter [*Id.*, ¶ 19].

On or about May 15, 2008, plaintiff asserts that he again obtained a copy of his Equifax credit report, again showing the allegedly incorrect date of delinquency [Doc. 2, ¶ 20; Doc. 6-1]. Plaintiff asserts that he obtained two more credit reports from Equifax on or about November 13, 2008, and December 28, 2008, and that both credit reports showed that defendant FAST was still reporting the incorrect date of delinquency to Equifax [*see* Doc. 2, ¶¶ 20-32].

Plaintiff filed his complaint against defendant FAST on April 10, 2009, alleging that defendant FAST continued to report a debt beyond the time allowed after the first delinquency, incorrectly reported the date of delinquency or date the account was opened, and failed to report that the debt was disputed [Doc. 2, ¶¶ 31-33]. Plaintiff asserts that defendant FAST's actions constitute false, misleading, and unfair communications, acts, omissions, and/or practices in an illegal attempt to collect a debt and in violation of "numerous provisions of the FDCPA," including, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), and 1692(f) [*see id.*].

In the instant motion, defendant FAST asserts that plaintiff's claims under the FDCPA are time-barred by the FDCPA statute of limitations, *see* 15 U.S.C. § 1692k(d), because the alleged "violation," the incorrect reporting of the delinquency date, occurred in January 2008, more than one year before plaintiff filed his complaint. Further, defendant FAST asserts that plaintiff's other allegations involve the reporting of the same information and are time-barred as "continuing" or "serial" violations not recognized under the FDCPA. Accordingly, because all plaintiff's claims are barred by the FDCPA's statute of limitations, defendant FAST asserts that all plaintiff's claims should be dismissed with prejudice.

## II. Analysis

### A. Standard of Review – Federal Rule of Civil Procedure 12(b)(1)

Defendant FAST asserts that plaintiff's complaint should be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a motion to dismiss "may either attack the claim of

4

jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). Defendant FAST has brought a factual attack on plaintiff's complaint. A party making a "factual attack" on subject matter jurisdiction challenges the actual existence of the court's jurisdiction—a defect that may exist even though the complaint contains the formal allegations necessary to invoke jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp. ("RMI")*, 78 F.3d 1125, 1134 (6th Cir. 1996). In this type of challenge, the court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter. *Golden*, 410 F.3d at 881; *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

    **B.**    **Plaintiff's FDCPA Claims**

The purposes of the FDCPA are to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors refrain from using abusive debt collection practices, and to promote consistent state action to protect consumers against debt collection abuses. *See* 15 U.S.C. § 1692(e). The FDCPA also prohibits debt collectors from making false or misleading representations in connection with the collection of a debt. *Id.* Plaintiff has alleged that defendant FAST violated, among others, the following provisions of the FDCPA:

> (2) The false representation of--
>     (A) the character, amount, or legal status of any debt; or
>     (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> . . . .

5

>   (8)   Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e. Plaintiff has also alleged that defendant FAST used "unfair or unconscionable means to collect or attempt to collect [a] debt." 15 U.S.C. § 1692(f). The FDCPA provides that actions to enforce the above provisions must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Plaintiff filed his complaint on April 10, 2009 [*see* Doc. 1]. Plaintiff argues that he first became aware of the incorrect delinquency date in his credit report in January 2008, but was not aware of each individual violation—the subsequent incorrect communication by defendant FAST to Equifax—until he actually obtained the individual credit reports and became aware of each new violation. Thus, plaintiff asserts, each new and incorrect credit report constitutes a communication in violation of the FDCPA and such violations are not barred by the statute of limitations because they fall within the one-year limitation period. Defendant FAST, on the other hand, argues that plaintiff's allegations for violations of the FDCPA accrued in January 2008, when plaintiff discovered the dispute and first alleged a violation. Thus, defendant FAST asserts, any further collection activity by defendant FAST involved reporting the same information as in the first violation and therefore the later reporting was merely a continuation of the first violation, which occurred more than one year before plaintiff filed his complaint.

### C. The Accruing of Claims Under the FDCPA

Case law reveals a tension between the courts that have addressed the issue of when a FDCPA claim accrues. Defendant FAST cites to the cases of *Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006 (D.N.D. 2006), *aff'd in part on other grounds*, 519 F.3d 416, 418 (8th Cir. 2008) and *Fraenkel v. Messerli & Kramer, P.A.*, No. Civ. 04-1072JRTFLN, 2004 WL 1765309 (D.Minn. July 29, 2004), among others, in support of its position that plaintiff's claims of violations occurring within the one-year limitation period are barred as "continuing" or "serial" violations. Plaintiff, on the other hand, cites to cases finding that similar violative communications within the one-year limitation periods are not timed-barred. *See Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997); *Purnell v. Arrow Fin. Servs., LLC.*, No. 05-CV-73384-DT, 2007 WL 421828 (E.D. Mich. Feb. 2, 2007).

In *Wilhelm*, the plaintiff argued that the defendant continued to issue a credit report regarding a disputed debt after being notified that the debt was disputed. *Wilhelm*, 455 F. Supp. 2d at 1008-09. The defendant argued that it could not be liable for a violation of the FDCPA because the plaintiff did not file suit over the disputed dept in the credit report until more than one year after he first notified the defendant of the disputed debt. *Id.* at 1009. The plaintiff argued that the defendant's actions constituted "serial violations" of the FDCPA, and the statute of limitations of the FDCPA "should be measured from the last violation," or, the date of the last report containing the disputed debt. *Id.* The court in *Wilhelm*, discussing and citing reported and unreported Eighth Circuit cases, rejected the plaintiff's "serial

7

violations" theory. *Id.* The court found that the statute of limitations accrued shortly after the plaintiff gave notice to the defendant that the debt was disputed, and thus, the plaintiff had a year after first giving notice within which to file suit based on that violation. *Id.*

Similarly, in *Fraenkel*, the defendant sent two collections letters to the plaintiff more than one year prior to the date the plaintiff filed his complaint asserting a FDCPA claim. *Fraenkel*, 2004 WL 1765309, at *1. Less than one year prior to the plaintiff's filing, the defendant filed a collection action in state court. *Id.* The *Fraenkel* court held that the plaintiff's FDCPA claim, which was based on service of the state court complaint by the defendant, was time-barred because the complaint repeated the same information alleged in the earlier collection letters, sent more than a year prior to when the plaintiff filed his complaint. *Id.* at *4. Accordingly, the *Fraenkel* court held that the plaintiff's claim accrued when the collection letters were sent because "[n]ew communications . . . concerning an old claim . . . [do] not start a new period of limitations." *Id.* (quoting *Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D. N.M. 2000)).

Other courts have come down differently. In *Pittman*, the plaintiff sued the defendant for FDCPA violations arising from communications, all of which, save for three, occurred outside the one-year statute of limitations. *Pittman*, 969 F. Supp. at 611. The court denied the defendant's motion to dismiss and allowed the case to continue based solely on the three communications which occurred within the one-year statute of limitations. *Id.* Similarly, in *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355 (S.D. Fl. 2000), the plaintiff received five collection letters pertaining to the same outstanding debt. *Kaplan*, 88 F. Supp. 2d at 1360.

8

The first of these letters had been sent more than one-year prior to the date the plaintiff filed his complaint. *Id.* Citing *Pittman*, the *Kaplan* court held that the plaintiff's FDCPA claims that arose out of the four communications within the one-year period were not time-barred and could go forward. *Id.; see also Murphy v. MRC Receivables Corp.*, No. 06-0299-CV-W-NKL, 2007 WL 148823, at *3 (W.D. Mo. Jan 12, 2007) (holding that the plaintiff's claims were not barred by the statute of limitations because immunizing "debt collectors from liability for any collection letters sent so long as the first letter was sent over one year from the date a plaintiff filed suit[.]" would "contravene the purposes of the FDCPA").

In *Purnell*, the defendant, who had acquired the plaintiff's debt as a third party, failed to mark the debt as disputed after being notified by the plaintiff. *Purnell*, 2007 WL 421828, at *1-2. Thus, the debt continued to be reported as disputed in subsequent credit reports. *Id.* In considering the statute of limitations question, the *Purnell* court considered the holding of *Wilhelm* but noted that the language of the statute of limitations in the FDCPA "places significance on when a violation is made, not when it is made known," and that each monthly report in which the defendant failed to correct the disputed debt presented a "separate harm to [the plaintiff] . . . and, for that matter, an independent opportunity for [the defendant] to comply with the statute." *Id.*, at *3-4. Further, the *Purnell* court noted that

> The harm that inheres in the simple fact that information about an apparently undisputed debt in that person's name exists in the credit reporting industry, which can have untold negative consequences for people to engage in commerce . . . . Specifically, the court will not follow the holding of *Wilhelm*, which held that the claims accrued shortly after the consumer's first letter disputed the debt.

*Id.*

In the instant case, plaintiff knew about the alleged violation in January 2008.[3] However, four of the communications plaintiff argues give rise to the alleged violations occurred within the one-year limitations period. Applying the rationale of *Purnell*, "the date of the dispute is irrelevant," in this case, January 2008 or February 19, 2008, when plaintiff first noticed the disputed date of delinquency, and "the relevant consideration is the date of the alleged violation by the debt collector," in this case, the May 15, 2008, September 11, 2008, November 13, 2008, and December 28, 2008 credit reports. Further, the Court finds persuasive the statements in *Purnell* that incorrect information in a credit report, to the extent it is reported again and again, may constitute a "separate harm" to a plaintiff for purposes of the FDCPA.

The Court also notes that other cases, cited by defendant FAST for the proposition that plaintiff's allegations of "continuing" or "serial" violations are time-barred if the allegations arise from a dispute that occurred prior to the limitation period, are distinguishable. For instance, in *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393 (S.D.N.Y. 1999), the defendant sent several demand letters to the plaintiff in the spring of 1997. *Sierra*, 48 F. Supp. 2d at 394. In June 1997, the parties reached a settlement agreement regarding the demand letters—a settlement the plaintiff breached by the end of the year. *Id.* at 394-95.

---

[3] Plaintiff asserts that he was not "aware" of each individual violation until he obtained each individual credit report. While this is technically true, plaintiff was aware of the situation giving rise to the alleged violation in January 2008 when he first obtained his credit report and, at the very least, on February 19, 2008, when Equifax informed plaintiff that defendant FAST had verified as correct the delinquency date of September 2002, the date plaintiff disputed.

On January 21, 1998, the defendant served the plaintiff with a summons and complaint, noticing a state court to enforce the settlement agreement. *Id.* at 395. In December 1998, the plaintiff sued the defendant alleging that the settlement agreement and demand letters of June 1997 violated the FDCPA. *Id.* The *Sierra* court found that the statute of limitations barred the plaintiff's claim. *Id.*

Thus, in *Sierra*, there was no alleged violation of the FDCPA within the one-year limitation period, rather, only new communications *regarding* an old violation—namely, that a summons and complaint after an allegedly violative settlement was reached. In this case, plaintiff has alleged individual credit reports violating the FDCPA and issued within the one-year limitations period. Further, the situation in the instant case is more analogous to what the *Sierra* court stated that the *Sierra* case was *not*, "[t]his is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred." *Sierra*, 48 F. Supp. 2d at 394.

The case of *Calka v. Kucker, Kraus & Bruh*, No. 98 Civ. 0990(RWS), 1998 WL 437151 (S.D.N.Y. August 3, 1998) is similar to *Sierra* in that there were no new violations alleged. In *Calka*, the plaintiff alleged that one defendant, the creditor, took assignment of a claim and then incorporated that assignment into a state court lawsuit by another defendant, the creditor's counsel, on July 16, 1996. *Calka*, 1998 WL 437151, at *1-2. In February 1998, the plaintiff filed suit in federal court, arguing that the incorporation of that assigned claim violated the FDCPA. *Id.* at *1-4. The plaintiff argued that her complaint was not time barred because the defendant had filed an amended complaint in the state court action,

11

containing the same claim for back rent that the plaintiff had objected too, and a motion for summary judgment on that same claim, all within one year of the time the plaintiff had filed her federal suit. *Id.* The court held that the statute of limitations barred the plaintiff's FDCPA claim because the plaintiff was on notice of the facts which formed the basis of her FDCPA claims when the defendant first filed its state court action, at which time the plaintiff's cause of action under the FDCPA accrued. *Id.* Thus, the *Calka* case involved the question of whether pleadings in a lawsuit filed in violation of the FDCPA renewed the limitations period—not whether there were actual violations of the FDCPA, as in this case.

The Court finds that the circumstances of this case are most analogous to *Pittman*, *Kaplan*, *Purnell*, and the *Sierra* exception. Defendant FAST sent four letters within the one-year limitations period. The letters, while involving the violation discovered outside of the limitations period, were separate communications which are alleged to have violated the FDCPA. As the text of the statute of limitations in the FDCPA indicates, the focus is the date "on which the violation occurs[,]" 15 U.S.C. § 1692k(d), not on the date on which the violation is known. A finding that a plaintiff could not assert a violation of the FDCPA for any alleged communication sent so long as the violation was detected over one year from the date a plaintiff filed suit would serve to immunize debt collectors from liability.

## III. Conclusion

Accordingly, the Court finds that plaintiff's claims based on communications violating the FDCPA and communicated after April 10, 2008 are not barred by the statute of limitations. 15 U.S.C. § 1692k(d). Thus, and for the reasons set forth herein, plaintiff's

claims under the FDCPA are not time-barred and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 5] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE